# Court of Appeals, State of Michigan

## ORDER

Michael J. Talbot, Chief Judge, acting under MCR 7.211(E)(2), orders:

The opinions in the following appeals are hereby AMENDED to correct a clerical error in the date of issuance. The date on the opinions is corrected to read April 10, 2018.

> **334631 People of MI v Maurice Larnell Glover**
>
> **335396 People of MI v Robert Daren Hale**
>
> **336245 People of MI v Toriono Kent**
>
> **336893 Goldcorp Inc v Varoujan M Basmajian**
>
> **337595 Jeffery Beck v Alpine Shredders Limited**
>
> **337951 Teddy 23 LLC v Department of Treasury**

In all other respects, the opinions remain unchanged.

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

APR 1 0 2018
_____
Date

_____
Chief Clerk

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

MAURICE LARNELL GLOVER,

       Defendant-Appellant.

UNPUBLISHED
April 9, 2018

No. 334631
Monroe Circuit Court
LC No. 15-242458-FC

Before: SERVITTO, P.J., and MARKEY and O'CONNELL, JJ.

PER CURIAM.

Defendant appeals by right his jury trial conviction of conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529. The trial court sentenced defendant to 250 to 480 months' imprisonment for the conspiracy to commit armed robbery conviction. We affirm.

In November 2015, Kristofer Miller agreed to have defendant stop by his home. Defendant and Miller had known each other for a "few years;" defendant was aware that Miller grew and processed marijuana in his home, and defendant knew where Miller stored his marijuana. Additionally, two days earlier, defendant was present when Miller called his own mother a "safe," in reference to how Miller's mother provided him with money.

On that day, defendant and Miller were inside Miller's home when Miller noticed that defendant received a call on his cellular phone; however, Miller only heard "the last bit" of the call where defendant said, "Like, yeah, come on." Subsequently, Miller noticed an automobile pull into his driveway on his surveillance system monitor, and then he saw two men heading towards his door. Miller went to investigate while defendant remained in Miller's room.

As Miller headed to his door, he encountered the men, and after a brief exchange, one of the men pointed a gun at Miller and demanded that he surrender his cellular phone. After a fight, Miller was beaten and his hands and feet were bound together with zip ties. During this time, Miller attempted to scream and make loud noises to catch defendant's attention, as he hoped defendant would call for help. After Miller was bound, the men demanded to know where to find Miller's marijuana and safe. During trial, Miller explained that he did not have a safe in his home and that the "general public" would not know that he kept marijuana in his home.

Eventually, one of the men, who was never identified, started searching through Miller's home, while the man with the gun stayed to watch Miller. During trial, Miller identified that

-1-

man as Darnell Jones, but he clarified that he did not know Jones at that time and that he only learned his name during subsequent court proceedings.

Ultimately, Miller slipped free of his bonds and escaped. He returned home after calling the police only to discover that defendant was gone. Video recordings taken from Miller's surveillance system showed that before they left, Jones and the unidentified man had placed guns taken from the inside of Miller's home into defendant's automobile. The recordings also showed that defendant only left after Jones and the other man had departed. Defendant was eventually arrested later that evening while traveling in the same automobile as Jones. Additionally, during trial, cellular phone records showed that defendant had twice called Jones close to when the incident occurred. Jones was charged as defendant's codefendant, and Jones ultimately entered a plea of nolo contendere for armed robbery before defendant's trial.

During trial, defendant had intended to call Jones as a witness; however, the trial court received notification that Jones was refusing to testify. Therefore, the trial court called Jones to the witness stand outside of the presence of the jury and placed him under oath to determine if he planned to testify. Jones quickly clarified that he did planned to testify; however, he explained that he wanted to inform the trial court that on the previous day, his attorney approached him with an offer from the prosecution to reduce his sentence in exchange for testimony that Jones had called him on the day of the robbery. The trial court inquired, "If the question were asked of you did [defendant] call you, what would your answer be?" Jones replied, "I would say no. You all can check you [sic] all records that you all have and that should show proof that he didn't call me."

The trial judge asked, "But nobody told you, Mr. Jones, you come in and lie and we'll knock 15 months off your sentence?" Jones responded, "No, they just said they lookin' [sic] forward for me to pretty much implicate [defendant] saying I called or he called me." Jones reiterated that defendant did not call him. Both the prosecutor and Jones's attorney explained that they had never reached a deal and that Jones's attorney was merely relaying a "potential" offer.

Regardless, Jones began to insist that he had to testify about the purported collusion between the prosecutor and his attorney. The trial court repeatedly tried to explain to Jones why that testimony could not be offered to the jury. Jones, however, persisted at expressing his intent to bring his claims before the jury. Ultimately, defendant's trial counsel elected to not call Jones as a witness, despite defendant's objections to that strategy.

Defendant contends that he was denied the effective assistance of counsel because his trial counsel did not call Jones as a witness during trial, and in his Standard 4 Brief,[1] defendant contends that his trial counsel was ineffective for failing to present evidence that was discussed during his opening statement. We disagree.

---

[1] Defendant's "Standard 4 Brief" is a pro se brief pursuant to Administrative Order No. 2004-6, Standard 4, 471 Mich cii (2005).

To preserve a claim of ineffective assistance of counsel, a defendant must move for a new trial or a *Ginther*[2] hearing to develop a record to support the claim. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). Defendant moved for a new trial based on his trial counsel's failure to call Jones as a witness. Ultimately, after an evidentiary hearing, his motion was denied. Therefore, this issue is preserved for appellate review insofar as to whether defendant's trial counsel was ineffective for failing to call Jones as a witness. But defendant contends in his Standard 4 Brief that his trial counsel was ineffective for failing to present evidence in accord with his opening statement because he did not call Jones to testify. Because that issue was not raised in defendant's motion for a new trial, it was not addressed during the evidentiary hearing.

Therefore, solely with regard to defendant's contention relating to his trial counsel's opening argument, "because the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record." *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). The record on appeal consists of "the original papers filed in that court or a certified copy, the transcript of any testimony or other proceedings in the case appealed, and the exhibits introduced." MCR 7.210(A)(1).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). "Findings on questions of fact are reviewed for clear error, while rulings on questions of constitutional law are reviewed de novo." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). When, no evidentiary hearing on a defendant's claims of ineffective assistance has been held, this Court's review is limited to mistakes apparent on the record. *Id*.

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012). To obtain a new trial for a denial of this right, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

Defense counsel's failure to call a witness can constitute ineffective assistance only if it deprives the defendant of a substantial defense, one that might have made a difference in the outcome of the trial. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009); *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009). But defense counsel has wide discretion in matters of trial strategy and may take calculated risks in order to win difficult cases. *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008). There is a strong presumption of effective assistance of counsel. *Id*. The fact that a reasonable trial strategy fails does not demonstrate that counsel provided ineffective assistance. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001).

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

During the hearing on defendant's motion for a new trial, defendant's trial counsel, Steven Jedinak, testified that he was aware Jones was defendant's codefendant and that he had entered a plea of nolo contendere to one count of armed robbery. Jedinak explained that even though he subpoenaed Jones, Jones's attorney would not allow Jedinak to interview Jones. Jedinak testified that he decided to not call Jones as a witness only after Jones spoke during trial.

Jedinak explained that defendant opposed his decision, but that he had strategic reasons for his decision. He noted that he asked Jones if he had any "phone contact" with defendant on the day of the incident, and Jones responded that he did not. According to Jedinak, Jones's testimony would have been "completely contradictory" to defendant's testimony and the evidence that the prosecution had presented. Jedinak was also concerned by the fact that Jones had just entered a plea of nolo contendere for armed robbery and that Jones had three "prior felony burglary" convictions as well.

During cross-examination, Jedinak explained that he believed that Jones' providing testimony inconsistent with defendant's would have resulted in the jury's concluding that either "one of them is lying or both of them are lying" and that would have "damaged somebody's credibility to hurt the chances of prevailing." Moreover, Jedinak was concerned by Jones's insistence that he needed to inform the jury about how "the prosecutor or his defense attorney wanted him to lie in exchange for a reduction of time," despite the trial judge's "admonishment not to[.]" Jedinak explained that he was concerned by Jones's "tirade" and how Jones never "wavered" from insisting that he must tell the jury about the purported collusion between Jones's attorney and the prosecutor.

But Jedinak explained that defendant had previously informed him that Jones had "apparently bought several types of narcotics from Mr. Miller over a period of time." Jedinak also conceded that this information might suggest that Miller was lying when he testified that he did not know Jones. During redirect, Jedinak confirmed that defendant could have testified that Jones was incorrect about their having no phone contact.

Jedinak believed that the prosecution had a strong case against defendant, especially because the prosecution presented video recordings of defendant arriving before and leaving after the two men who robbed Miller, and the "armed robbers, one Mr. Jones, the other one unidentified, dumping two of the guns they stole from the house inside of [defendant's] vehicle." Additionally, Jedinak explained that the prosecution had "detailed phone evidence" and that Jones and defendant "were found together 12 hours later in Toledo in the same vehicle when they were both arrested."

Defendant testified that he was not involved in Miller's robbery. He explained that he believed Jones did not understand the question posed to him when Jones testified that he did not have any phone contact with defendant on the day of the incident because Jones had called defendant asking for a ride on that morning. He explained that he insisted that Jones testify because Jones was the only one who knew "the truth" regarding the incident. Defendant believed that Jedinak's refusal to call Jones as a witness resulted in the complete breakdown in their attorney-client relationship. But during cross-examination, defendant admitted that he did know what Jones's testimony would be, or that was he aware of Jones's prior felony convictions.

Ultimately, the trial court denied defendant's motion for a new trial because defendant was not denied the effective assistance of counsel. The trial court explained that while Jedinak's decision was contrary to defendant's wishes, Jedinak properly explained why he did not call Jones, including: (1) his concern that Jones would impeach defendant's credibility, and (2) Jones's insistence at presenting his claims of collusion to the jury without any heed to the trial court's warnings that such testimony would be not tolerated during trial.

Defendant contends that he was denied the effective assistance of counsel when Jedinak failed to call Jones as a witness. Defendant's contention is without merit.

According to defendant, Jedinak's refusal to call Jones as a witness was a grave error because Jones would have provided testimony that would have completely exonerated defendant. Defendant relies on Jones's affidavit, which was attached to his motion for a new trial, wherein Jones details how he previously procured marijuana from Miller with cash or heroin, and how the incident with Miller was, in fact, a fight that erupted after Miller discovered that Jones did not have any heroin to trade for marijuana. Therefore, defendant contends that Jones would have exonerated him and undermined Miller's credibility because Miller testified that he did not know Jones. Moreover, defendant asserts that Jones was merely mistaken about not having any phone contact with him on the day of the incident, and that if Jones had testified, defendant would have been able to "set the record straight" by testifying that Jones was mistaken about that point.

Defendant, however, has failed to demonstrate how Jedinak's refusal to call Jones as a witness deprived him of a substantial defense or how that decision was outcome-determinative. Even when assuming that Jones would have testified as set forth in his affidavit, we note that Jones's testimony would have called into question the veracity of defendant's testimony. Specifically, during trial, when the trial court asked Jones if defendant had called him, Jones replied, "I would say no. You all can check you [sic] all records that you all have and that should show proof that he didn't call me." Jones's testimony that defendant had not called him would have directly conflicted with the prosecution's evidence that cellular phone records showed that defendant called Jones twice close to the time of the incident and defendant's own testimony that he called Jones multiple times on that day.

Even if defendant had tried to explain that Jones was mistaken about their telephone contact, the jury would have been presented with ample grounds to conclude Jones and defendant had not provided truthful testimony. Moreover, undermining defendant's credibility would have been a highly questionable strategy where defendant testified that he did not hear any commotion during the incident; he did not call 911 after discovering blood drops and that Miller was missing; he did not call 911 after he discovered guns in his backseat after fleeing from Miller's home, and it was happenstance that he was in the same automobile as Jones on the evening after the incident. Defendant's testimony already straddled the incredible; there was no need to inject testimony that would have pushed defendant's credibility further over the edge.

Nor would the value of impeaching Miller's testimony outweigh undermining defendant's own testimony: Miller's account was corroborated by video recordings taken from his home surveillance system, the blood at the scene, and the zip ties used to bind Miller found inside of Miller's home. Therefore, defendant has failed to rebut the strong presumption that Jedinak exercised sound trial strategy when he refused to call Jones as a witness where

-5-

defendant's trial strategy hinged upon defendant's own testimony that he was the victim of happenstance and when Jones's testimony would have undermined defendant's credibility. Further, Jedinak was also properly wary of calling Jones to testify knowing Jones repeatedly refused to agree to comply with the trial court's instructions to not inject irrelevant testimony regarding the prosecution's purported collusion with Jones's attorney.

In his Standard 4 Brief, defendant argues that Jedinak was ineffective because in his opening statement, Jedinak contended that the evidence at trial would show that Miller had two customers and that defendant's connections with the incident and Jones were mere happenstance. Defendant's argument lacks merit.

Specifically, defendant argues that Jedinak failed to provide him with effective assistance of counsel because his refusal to call Jones as a witness during trial resulted in Jedinak's not presenting evidence that Jones was also Miller's customer or evidence relating to defendant's presence being happenstance. However, defendant has merely reframed the same contention raised in his brief on appeal, i.e., that Jedinak was ineffective for failing to call Jones as a witness. Therefore, defendant's argument fails for the same reasons discussed above.

Defendant also contends in his Standard 4 Brief that he was denied a fair trial due to prosecutorial misconduct because the prosecutor's purported collusion with Jones's attorney ultimately resulted in Jones's not providing testimony during trial. We disagree.

To preserve a claim of prosecutorial misconduct "for appellate review, a defendant must have timely and specifically objected below, unless an objection could not have cured the error." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). Defendant did not preserve this issue by raising an objection in the trial court based on prosecutorial misconduct.

"Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *Id*. To avoid forfeiture under the plain error rule, the defendant must demonstrate that an error occurred; the error was plain, and the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third prong requires a showing of prejudice, which occurs when the error affected the outcome of the lower court proceedings." *People v Putman*, 309 Mich App 240, 243; 870 NW2d 593 (2015).

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. This Court considers claims of prosecutorial misconduct on a case-by-case basis, and the prosecutor's remarks must be considered in context. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). "Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial," and may "argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Unger*, 278 Mich App at 236; *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995).

Defendant contends in his Standard 4 Brief that he was denied a fair trial due to prosecutorial misconduct because the prosecutor's purported collusion with Jones's attorney ultimately resulted in Jones's not providing testimony during trial. Defendant's contention fails.

Essentially, defendant contends that but for the prosecutor's decision to contact Jones's attorney regarding Jones's testimony during defendant's trial, Jones would have testified on

defendant's behalf. Defendant provides no legal authority in support of his position, other than an assertion that it was "clear error" for the trial court to find that the prosecution had not engaged in "subterfuge." "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Kelly*, 231 Mich App 627, 640-641; 588 NW2d 480 (1998). Consequently, we conclude that defendant has abandoned this contention on appeal.

Regardless, defendant's contention has no merit. At the outset, it is important to note that Jones testified under oath that no one asked him to lie in exchange for a reduced sentence. Additionally, despite Jones's decision to repeatedly insist to the trial court that he had to inform the jury regarding the attempted collusion between his attorney and the prosecutor, the trial court clearly stated that it would have permitted Jones to testify so long as his testimony did not reach that specific topic. Yet it was not the prosecutor's decision which prevented Jones from testifying; it was defendant's own trial counsel. Insofar as any error that defendant alleges here, it once again appears to be the error of his own trial counsel in failing to call Jones as a witness. And as discussed above, that contention has no merit.

Alternately, defendant appears to contend that the prosecutor deliberately engaged in "subterfuge" to undermine defendant's defense strategy by initiating a conversation with Jones's attorney after defendant's trial had begun. But as the prosecutor and Jones's attorney explained during trial, their discussion only pertained to a "potential offer" if Jones testified during defendant's trial. But, ultimately, Jones balked at his attorney's overview of the potential offer, and, as noted above, Jones admitted there was never any attempt to induce him to lie during defendant's trial. And finally, defendant has failed to demonstrate how the prosecutor deliberately attempted to prevent Jones from testifying during defendant's trial.

We affirm.

/s/ Deborah A. Servitto
/s/ Jane E. Markey
/s/ Peter D. O'Connell