*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TAIWAN PRATER,

        Defendant-Appellant.

UNPUBLISHED
November 3, 2022

No. 357546
Macomb Circuit Court
LC No. 2019-000971-FC

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

PER CURIAM.

Defendant Taiwan Prater ("Prater") appeals as of right his conviction, following a jury trial, of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b(1)(a), (2)(c) (sexual penetration by an individual 17 years of age or older against an individual less than 13 years of age). The court sentenced Prater, who had previously been convicted of CSC-I, MCL 750.520b(1)(a), to mandatory life imprisonment without the possibility of parole. See MCL 750.520b(2)(c) (providing a penalty of life without parole for a second conviction under MCL 750.520b committed by an individual over 18 years old against an individual under 13 years old). Prater argues the trial court erred by admitting evidence of his prior conviction as statutory other acts under MCL 768.27a(1), and by miscalculating the guidelines at sentencing. We affirm.

## I. BACKGROUND

Following a jury trial in 2021, Prater was convicted of one count of CSC-I. Prater's count of conviction related to his sexual penetration of EC, his wife's younger sister, in their family residence in Mt. Clemens in or around 2013. At trial, the prosecution presented evidence that Prater, then 38 years old, began engaging in sexual acts with EC when she was 12 years old, after EC moved into their family residence. EC, age 19 at the time of trial, testified that during the first incident, Prater approached her as she was sleeping in the living room, inappropriately touched her, and ultimately rubbed his penis between the lips of her vagina. EC disclosed the incident to her sister the next day, believing that she would intervene and the conduct would stop. Prater, however, continued to engage in sex acts with EC, including penile-vaginal penetration on multiple occasions. EC also disclosed the assaults to her brother AC. AC testified that when Prater was

-1-

intoxicated, he admitted to engaging sexually with EC. Yet, AC did not take further action because Prater was assaultive to and threatened him. Prater's sexual assaults continued until EC eventually moved out of the residence. In 2017, EC's foster mother reported the criminal sex acts to the police after EC disclosed the incidents. EC initially recanted, but the following year, she disclosed. Although the prosecution presented other evidence, EC's testimony was the only direct evidence of the crime.

At trial, the prosecution also presented evidence that Prater was previously convicted of CSC-I in 1996, when Prater, then 22 years old, sexually assaulted another 12-year-old girl, TM. TM, age 38 at the time of trial, testified that Prater broke into her home in Detroit and "raped" her. Specifically, she testified that after walking past Prater earlier that day, she returned home before nightfall, went to sleep, and woke with Prater standing next to her bed. Prater, who had a gun in his hand, led her to the living room, where he penetrated TM's vagina with his penis. A witness then entered the home and Prater fled. TM subsequently identified Prater in a lineup and he was convicted.

Prior to trial, the court ruled on the admissibility of TM's testimony. The prosecution filed notice of its intent to admit other-acts evidence, and the defense filed an objection.[1] Like here, Prater argued that the 1996 conduct was excludable under MRE 403 due to the risk of unfair prejudice, dissimilarity between the 1996 conduct and this case, and the temporal gap between the two cases. Prater also argued that the 1996 case involved the commission of other crimes, specifically, home invasion, but the focus of his argument was the temporal gap. The trial court held a hearing, took the matter under advisement, and issued a written opinion and order. In it, the trial court held that the 1996 acts were admissible and did not violate MRE 403. When instructing the jury, the trial court provided a limiting instruction regarding the jury's consideration of the other acts evidence.

The defense theory at trial was that EC's testimony was inconsistent and not credible, and there was no corroborating physical evidence or eyewitnesses. The defense called a psychologist to testify about the reliability of EC's forensic interview disclosing the sexual abuse based on the interviewer's questioning.

Pursuant to statute, the trial court sentenced Prater to the mandatory sentence of life without the possibility of parole. The sentencing hearing spanned three days due to two adjournments. At the final hearing, the trial court declined to rule on the prosecutor's request to increase the scoring of Offense Variable (OV) 13 because it would be sentencing Prater to mandatory life imprisonment. But, at the first sentencing hearing, the court resolved Prater's challenge to the 10-point score for prior record variable (PRV) 7, and Prater never renewed any challenge to the scoring of PRV 7 at the two subsequent hearings. At the first hearing, the defense argued that the court should score PRV 7 at zero. The prosecution argued that it was correctly scored at 10:

---

[1] The record is silent on whether the defense offered to stipulate to the fact of Prater's 1996 conviction.

[The prosecutor]: Judge, the—I believe that Probation has scored that accurately. Our dates of offense were from 2013 through 2015. In 2016 this defendant was convicted of a fleeing and [eluding] along with three other misdemeanors so that felony should be scored. The instructions on these sentencing guidelines under PRV 7 indicate[] the appropriate value under PRV 7 should be assessed if the offender was convicted of multiple felony counts, which he was not, or was convicted of a felony after the sentencing offense was committed. So it's our opinion it was committed between 2013 and '15, this conviction comes after that, I think ten points is accurate.

\* \* \*

The court: Do you have—that seems like clear and unambiguous language so I'm listening to your argument. It says from the felony after the sentencing offense was committed, which [the prosecutor] says between 13 and 15 and then subsequent to the one in '13 your client pick[ed] up another offense. Is that true and is that an accurate reading of the statute?

[Defense counsel]: Judge, under that set—under that interpretation that would be accurate.

The court: All right. Well, I mean, I'm not offered any other interpretation and that language seems fair to me, and I don't have any case law telling me that there's anything contrary, [defense counsel], so I have to overrule your objection and PRV 7 is scored appropriately at ten. All right.

[Defense counsel]: Judge, I have no—

The court: Counsel, as to the—what's that?

[Defense counsel]: I apologize. I just wanted the Court to know I have no other challenges to the calculations, Judge[.]

At the end of the third day of sentencing, pursuant to MCL 750.520b(1)(a) and (2)(c), the court sentenced Prater to life without the possibility of parole. This appeal followed.

## II. OTHER-ACTS EVIDENCE

First, Prater challenges the trial court's decision to allow the prosecutor to present evidence that Prater had previously sexually assaulted 12-year-old TM in 1996. Prater does not argue that the evidence was admitted in violation of MCL 768.27a(1); rather, he argues that the trial court should have excluded the evidence under MRE 403 because the risk of unfair prejudice substantially outweighed the probative value of the evidence. We disagree.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v Thorpe*, 504 Mich 230, 251-252; 934 NW2d 693 (2019). "The decision to admit evidence is within the trial court's discretion and will not be disturbed unless that decision falls outside the range of principled outcomes." *Id*. at 251-252 (quotation marks and citation omitted.) "A decision

-3-

on a close evidentiary question ordinarily cannot be an abuse of discretion." *Id*. "Preliminary questions of law, such as whether a rule of evidence or statute precludes the admission of particular evidence, are reviewed de novo . . . ." *People v Bynum*, 496 Mich 610, 623; 852 NW2d 570 (2014).

MCL 768.27a(1) is a statutory carveout to the Michigan Rules of Evidence. Like MRE 404(b), it permits the prosecution to introduce evidence of other bad acts a defendant committed. See MCL 768.27a(1). Unlike MRE 404(b), which allows admission of other bad acts for non-propensity purposes (i.e., identity, intent, lack of mistake, common scheme or plan, etc.), MCL 768.27a(1) allows admission of other instances of sexual misconduct for any relevant purpose. Compare MRE 404(b) with MCL 768.27a(1). It provides that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." See MCL 768.27(a)(1). Evidence is relevant if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401. A defendant's propensity to commit a crime makes it more probable that he committed the charged offense. *People v Watkins*, 491 Mich 450, 470; 818 NW2d 296 (2012). As with MRE 404(b), however, the trial court may exclude otherwise admissible other-acts evidence if it violates MRE 403.

The parties do not dispute that the charged offense and the prior act both qualify as listed offenses against a minor. See MCL 768.27a(2). The other-acts evidence was relevant to Prater's propensity to sexually assault underaged females and therefore assisted the jury in weighing EC's credibility. That is particularly true here, where the defense strategy was to attack EC's credibility. For example, the defense argued that it was inconsistent for EC to claim both to have confronted Prater about his actions and to have been afraid of him, and suggested that her claim that Prater repeatedly sexually assaulted her in the "small" house when others were in the house, yet no one saw anything, "was troubling." The other-acts evidence was relevant because evidence of Prater's prior criminal sex acts with a 12-year-old girl tended to make more likely EC's otherwise uncorroborated testimony.

Acknowledging its relevance, evidence offered under MCL 768.27a is still subject to MRE 403, which provides that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See MRE 403; *Watkins*, 491 Mich at 481. MRE 403 does not exclude evidence merely because it is prejudicial, because all relevant evidence is prejudicial to some extent. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). Instead, the court may only exclude evidence where the risk of *unfair* prejudice substantially outweighs the evidence's probative value. *Id*. Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Id*. at 75-76 (citation omitted); *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). When applying MRE 403 to evidence in the context of MCL 768.27a, "courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 487. Thus, "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference." *Id*. Courts should consider the following factors when deciding whether to exclude other-acts evidence under MRE 403 as being overly prejudicial:

(1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

When weighing the probative value of other-acts evidence, courts should consider the extent to which the other-acts evidence supports the victim's credibility and rebuts any defense attack on the victim's credibility. *Id*. at 491-492. "The list of 'considerations' in *Watkins* provides a tool to facilitate, not a standard to supplant, . . . [a] proper MRE 403 analysis, and it remains the court's 'responsibility' to carry out such an analysis in determining whether to exclude MCL 768.27a evidence under [MRE 403]." *People v Uribe*, 499 Mich 921; 878 NW2d 474 (2016).

Contrary to Prater's arguments, the first factor from *Watkins*—similarity between the other act and the charged sexual assault—weighs in favor of admissibility. The prior conviction and the current offense are " 'of the same general category because they involve[d] sex crimes . . . against children.' " See *People v Duenaz*, 306 Mich App 85, 101; 854 NW2d 531 (2014) (citation omitted). Prater's prior victim and EC were the same age—12 years old—when the charged sexual conduct occurred. The charged CSC-I offense involved penile-vaginal penetration, the same type of sexual conduct underlying Prater's 1996 conviction. And Prater surprised them both while they were sleeping. There were differences between the two episodes, most notably that in the 1996 case, Prater used a gun and broke into TM's house to commit the offense, whereas here, he was living in the same residence as EC and did not use a gun. But each situation involved Prater's opportunistic sexual assault of a young female, 12 years of age, involving penile-vaginal penetration.

Prater's challenge to the second *Watkins* factor—the temporal proximity of the other-acts evidence to the charged offense—also is not persuasive. The previous CSC-I offense occurred in 1996, and the charged offense occurred in 2013. But this ostensible 17-year gap is not dispositive for two reasons. First, MCL 768.27a does not contain a temporal limitation, and this Court has held that "[t]he remoteness of the other act affects the weight of the evidence rather than its admissibility." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Second, Prater was imprisoned from 1996 until 2008 for the previous assault. Although the offenses occurred approximately 17 years apart, Prater began committing the charged offense only five years after his release from prison and four years after he completed his parole. Thus, this factor weighs in favor of admissibility.

Further, contrary to Prater's argument, there was a need for testimony beyond that of EC because there were no eyewitnesses to corroborate her testimony that Prater forced sex upon her. The other-acts evidence was limited to aiding the jury in evaluating EC's credibility and rebutting Prater's attack on her credibility at trial. Defense counsel repeatedly argued at trial that there was no physical evidence or eyewitnesses to corroborate EC's claims. The lack of physical evidence increases the comparative probative value of the other-acts evidence.

Prater makes no specific and applicable argument that other factors listed in *Watkins* render the other-acts evidence inadmissible under MRE 403. Considering the highly probative value of

the other-acts evidence, the probative value was not substantially outweighed by the danger of unfair prejudice. The other-acts evidence was probative of Prater's intent and propensity to sexually assault 12-year-old girls. Moreover, in its final instructions, the trial court gave a cautionary instruction to the jury concerning the proper use of the evidence, thereby limiting the potential for unfair prejudice. Prater argues that the trial court's instructions were inadequate because the court failed to include the crucial language: "You must not convict the defendant here solely because you think he is guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt that the defendant committed the alleged crime, or you must find him not guilty." The record does not support this argument. On the contrary, the record reveals that the trial court instructed the jury as follows:

> The prosecution has introduced evidence of claimed acts of sexual misconduct by the defendant, with a minor, for which he is not on trial. Before you may consider such alleged acts as evidence against the defendant, you must first find that the defendant actually committed those acts. If you find that the defendant did commit those acts, you may consider them in deciding if the defendant committed the offense for which he is now on trial. *You must not convict the defendant here, solely because you think he is guilty of other bad conduct. The evidence must convince you, beyond a reasonable doubt, that the defendant committed the alleged crime, or you must find him not guilty.*

Because the probative value of the other-acts evidence was not substantially outweighed by the danger of unfair prejudice, the trial court did not abuse its discretion by allowing the evidence at trial.

## III. SENTENCING

Lastly, Prater argues that he is entitled to sentencing relief because the trial court refused to consider his challenge to the accuracy of the scoring of his sentencing guidelines. We disagree. Prater's argument is meritless because MCL 750.520b(2)(c) established a mandatory penalty of life imprisonment for his conviction, so the sentencing guidelines do not apply. See MCL 769.34(5).

When reviewing a trial court's scoring decision, the trial court's "factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. Further, we review improperly calculated guidelines for harmlessness. *People v Blevins*, 314 Mich App 339, 363; 886 NW2d 456 (2016).

Here, any error in the guidelines was harmless because Prater's mandatory life sentence for this CSC-I conviction is not subject to the guidelines. See MCL 769.34(5) (providing that the sentencing guidelines do not apply to sentencing for crimes punishable by a mandatory penalty of life imprisonment); *People v Brown*, 294 Mich App 377, 392; 811 NW2d 531 (2011). We therefore do not need to address this issue at all. See *Brown*, 294 Mich App at 392 (upholding mandatory life sentence; rejecting defendant's claim that his sentence constituted an unjustified departure

from the sentencing guidelines because his sentence under MCL 750.520b(2)(c) was mandated by statute). Here, the trial court correctly stated that the guidelines do not apply to Prater's sentence and correctly imposed the mandatory sentence.[2]

We affirm.

/s/ Anica Letica
/s/ Deborah A. Servitto
/s/ Noah P. Hood

---

[2] Further, Prater's argument that the court refused to consider his challenge to PRV 7 is also incorrect. Contrary to Prater's argument on appeal, the trial court addressed his challenge to the scoring of PRV 7 and correctly found that the evidence supported a 10-point score for that variable. (Although Prater cites OV 7 in his brief, it is apparent that he intends to refer to PRV 7. Prater was not assessed any points for OV 7, and he cites the portion of the record that contains defense counsel's objection to the scoring of PRV 7.)

Prater's sentencing hearing took place over three different dates. Prater correctly notes that at the final hearing, the trial court did not rule on the prosecution's objection to its scoring on OV 13 because Prater was facing a mandatory sentence of life without parole. But on the first day of the sentencing hearing, the court addressed Prater's challenge to the 10-point score for PRV 7, and Prater never renewed his objection on the following hearing dates. Thus, the trial court clearly addressed Prater's sole challenge to the scoring of the guidelines.

Further, the record supports the trial court's 10-point score for PRV 7, which considers subsequent or concurrent felony convictions. See MCL 777.57. A score of 10 points is appropriate if "[t]he offender has 1 subsequent or concurrent conviction[.]" MCL 777.57(1)(b). In scoring PRV 7, the appropriate points must be assessed "if the offender was convicted of multiple felony counts or was convicted of a felony after the sentencing offense was committed." MCL 777.57(2)(a). The sentencing offense was committed in 2013. As referenced in the trial court, Prater was convicted by plea of third-degree fleeing or eluding a police officer, MCL 257.602a(3), in June 2016, for an offense committed in March 2016. Because this conviction occurred subsequent to the commission of the charged offense, it qualifies as a subsequent conviction for purposes of scoring PRV 7. The trial court's 10-point score for PRV 7 was correct. For this additional reason, Prater is not entitled to sentencing relief.