PEOPLE v BROWN

Docket No. 297728. Submitted October 11, 2011, at Detroit. Decided
    October 20, 2011, at 9:00 a.m. Leave to appeal denied, 492 Mich
    852.

Bryan Brown was convicted following a jury trial in the Macomb
    Circuit Court of first-degree criminal sexual conduct (CSC-I)
    involving a victim under 13 years of age. The court, James M.
    Biernat, Sr., J., sentenced defendant to life in prison. Defendant
    appealed by leave granted.

The Court of Appeals held:

1. The test of prosecutorial misconduct is whether the defen-
dant was denied a fair and impartial trial. However, a prosecutor's
good-faith effort to admit evidence does not constitute misconduct.
In this case, defendant failed to show that the prosecution acted in
bad faith when it introduced evidence that defendant was the
subject of a federal child-pornography investigation and that he
had been arrested for possession of marijuana. Thus, defendant
failed to establish prosecutorial misconduct, but even if the
prosecutor had engaged in misconduct, defendant would not have
been entitled to relief because of the strong evidence supporting
his conviction.

2. Under MRE 404(b)(1), evidence of other crimes, wrongs, or
acts is not admissible to prove the character of a person in order to
show action in conformity with that character. It may, however, be
admissible for other purposes, such as proof of motive, opportunity,
intent, preparation, scheme, plan, or system in doing an act, knowl-
edge, identity, or absence of mistake or accident when the same is
material, whether such other crimes, wrongs, or acts are contempo-
raneous with, or prior or subsequent to the conduct at issue in the
case. Under MCL 768.27a, in a criminal case in which the defendant
is accused of committing a listed offense against a minor, evidence
that the defendant committed another listed offense against a minor
is admissible and may be considered for its bearing on any matter to
which it is relevant. A defendant's propensity to commit criminal
sexual behavior can be relevant and admissible to demonstrate the
likelihood of the defendant committing criminal sexual behavior
toward another minor, but the evidence must also be assessed for
whether its probative value is outweighed by its prejudicial effect. In

this case, the trial court did not abuse its discretion by admitting evidence that defendant had improperly touched another girl, who at the time was the same age as the victim in this case. Contrary to defendant's assertion, the court recognized its duty to weigh the probative value of the evidence of other acts against the potential for unfair prejudice and concluded that the evidence was admissible. And the length of time between defendant's conduct toward the other-acts witness and the charged offense only affected the weight of the evidence, not its admissibility.

3. To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and (3) the resultant proceedings were fundamentally unfair or unreliable. Defendant failed to establish that he received ineffective assistance of counsel based on counsel's failure to object to the alleged instances of prosecutorial misconduct given that he failed to show the existence of prosecutorial misconduct, but regardless, the claim of ineffective counsel failed in light of the overwhelming evidence supporting the conviction.

4. A sentencing court cannot base its sentence on a defendant's decision to exercise his or her constitutional right to a jury trial. However, it is not per se unconstitutional for a defendant to receive a higher sentence following a jury trial than he or she would have received in exchange for pleading guilty. In this case, defendant was sentenced to life in prison following his trial, but the trial court was required by statute to impose that sentence and, thus, the sentence could not be viewed as punishment for defendant's decision to proceed to trial.

5. In deciding if punishment is cruel or unusual, a court considers the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in Michigan and the penalty imposed for the same crime in other states. Under 750.520b(2)(c), a defendant over the age of 17 who commits CSC-I involving a victim less than 13 years of age when the defendant was previously convicted of a similar sex crime with a victim less than 13 years of age must be sentenced to life in prison without the possibility of parole. The penalty of life in prison for a repeat offender convicted of CSC-I involving a victim under the age of 13 reflects the gravity of the offense and is similar to the penalties imposed in other states. The penalty is not unconstitutionally cruel or unusual. Further, the sentencing guidelines range does not apply to crimes for which there is a

mandatory sentence, and the imposition of a mandated sentence does not constitute a departure from the guidelines.

Affirmed.

CONSTITUTIONAL LAW — SENTENCES — CRUEL OR UNUSUAL PUNISHMENT — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — REPEAT OFFENDERS — LIFE IMPRISONMENT.

In deciding if punishment is cruel or unusual, a court considers the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in Michigan and the penalty imposed for the same crime in other states; a defendant over the age of 17 who commits first-degree criminal sexual conduct (CSC-I) involving a victim less than 13 years of age when the defendant was previously convicted of a similar sex crime with a victim less than 13 years of age must be sentenced to life in prison without the possibility of parole; the penalty of life in prison for a repeat offender convicted of CSC-I involving a victim under the age of 13 reflects the gravity of the offense and is similar to the penalties imposed in other states; the penalty is not unconstitutionally cruel or unusual (US Const, Am VIII; Const 1963, art 1, § 16; MCL 750.520b[2][c]).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *Eric J. Smith*, Prosecuting Attorney, and *Joshua D. Abbott*, Assistant Prosecuting Attorney, for the people.

*Linda D. Ashford, P.C.* (by *Linda D. Ashford*), and Bryan Brown, *in propria persona*, for defendant.

Before: OWENS, P.J., and JANSEN and O'CONNELL, JJ.

PER CURIAM. Following a jury trial, defendant was convicted of one count of criminal sexual conduct in the first degree (CSC-I), MCL 750.520b(1)(a) (victim under 13 years old). The trial court sentenced defendant to life in prison. Defendant appeals by leave granted.[1] We affirm.

---

[1] *People v Brown*, unpublished order of the Court of Appeals, entered September 30, 2010 (Docket No. 297728).

The complainant in this matter, MO, was born on September 23, 2002. MO's mother was in a dating relationship with defendant and moved in with him in May 2007, bringing MO with her. Defendant and MO were often left alone together. On April 16, 2008, MO, then five years old, was playing with CL, a boy who lived in her neighborhood. CL went to his brother's car to get a toy from the trunk; CL's little brother and MO accompanied him. The children found DVDs depicting naked people on the cover engaging in sex acts. MO picked up one of the DVDs, and CL indicated that she should not be looking at it. According to CL, MO said that her dad made her "suck his wiener every night" and that he "videotapes them, like, doing it." CL understood that MO was referring to defendant as her dad. MO also told CL that defendant called what they did together the humping game. Shortly after, defendant arrived to take MO home.

Right after defendant took MO home, CL told his mother what MO had reported to him. She called the police. Brent Chisolm and William Ross, officers with the Warren Police Department, went to defendant's residence to investigate the complaint they had received. When the officers arrived, MO was sleeping in defendant's bed wearing only underpants. According to Ross, he detected the odor of burnt marijuana in defendant's bedroom and saw drug paraphernalia in an open drawer. Consequently, defendant was arrested for possession of narcotics and paraphernalia.

Robert Krist, a detective with the Warren Police Department, was assigned as the co-officer-in-charge and investigated defendant's background. He learned that defendant had been convicted in Illinois of charges relating to other sexual conduct involving minors. Subsequently, a search warrant for defendant's home was

obtained and executed, resulting in the seizure of a laptop, a video camera, five Hi8 tapes for the video camera, and nudist videotapes.

As part of this investigation, Krist worked with Donald Raymo, a federal agent with the Department of Homeland Security in the cybercrimes division, which typically investigates child-pornography allegations. Raymo had been investigating a person named Bryan Brown. When he learned defendant was the subject of a criminal sexual behavior investigation, Raymo agreed to engage in a joint investigation, offering to process the electronic evidence related to this case. According to Raymo, one of the videos seized from defendant's home included a 10-minute segment that constituted child pornography; that section of the video was located midway through the tape and was preceded by a black screen, indicating that it had been taped over. It was followed by footage of a wedding. This tape was played for the jury at trial.

At trial, MO testified that defendant put his "private parts" in hers and that it felt bad when he did. MO indicated this happened in her mother's bed. However, MO could not recall ever seeing defendant with a camera and denied making a movie with defendant.

During the trial, defendant's Illinois convictions for sexual misconduct involving minors were introduced without objection. In addition, the prosecution introduced the testimony of KD, who had been coached by defendant as a gymnastics student in 1997 when she was approximately five years old. KD testified that defendant would grab her and pull her close and then put his hand underneath her leotard and touch her vaginal area on the outside.

Defendant testified on his own behalf. He described his relationship with MO's mother and MO as a "[v]ery

loving family" and said that MO was the "daughter [he] always wished [he] had." Defendant testified he never thought about MO sexually. He denied putting his "privates" in MO's and further denied ever having MO perform fellatio on him. Defendant acknowledged that he had previously been a gymnastics teacher in Illinois and had pleaded guilty with respect to the convictions introduced earlier. He denied being sexually attracted to five-year-old girls or children in general. Defendant stated that it was a coincidence that MO was close in age to the girls involved in his prior convictions.

## II. PROSECUTORIAL MISCONDUCT

First, defendant claims that the prosecution engaged in prosecutorial misconduct. We disagree.

In order to preserve a claim of prosecutorial misconduct for appellate review, a defendant must have timely and specifically objected below, unless objection could not have cured the error. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008). Defendant did not object at trial to Krist's or Raymo's testimony related to the federal investigation of defendant. Nor did defendant object to any of the testimony related to defendant's arrest for possession of child pornography. Finally, defendant did not object to the prosecutor's questions and statements that defendant characterizes on appeal as arguing that defendant is a pedophile. Thus, this issue was not preserved. Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 453-454; 678 NW2d 631 (2004).

The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-

by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context. *Thomas*, 260 Mich App at 454.

Defendant first argues that he was denied a fair trial when the prosecutor elicited testimony from Krist and Raymo indicating he was the subject of a federal child-pornography investigation. Defendant specifically argues that this evidence was irrelevant and served only to paint defendant as a bad man by implying that he was the target of a federal investigation into child pornography.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. This is a broad definition, allowing the admission of evidence that is helpful in throwing light on any material point. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Despite this broad definition, that Raymo may have been investigating defendant relative to child-pornography activity should have no bearing on a determination whether defendant committed the charged offense. Thus, this evidence could be characterized as irrelevant. However, a prosecutor's good-faith effort to admit evidence does not constitute misconduct. *Dobek*, 274 Mich App at 70. Even if the evidence could be characterized as irrelevant, defendant has not established bad faith.

Defendant next argues that the prosecutor engaged in misconduct by injecting other acts evidence for the purpose of showing that defendant had the propensity to commit crimes. He takes issue with references to his arrest for possession of marijuana and drug paraphernalia. Defendant specifically argues that the subject of drugs tends to inflame the passions of a jury and thus was unfairly prejudicial. Evidence is unfairly prejudicial when

it presents a danger that marginally probative evidence will be given undue or preemptive weight by the jury. *People v Ortiz*, 249 Mich App 297, 306; 642 NW2d 417 (2001). In light of the nature of the charge defendant faced at trial and evidence of previous instances of child-sexual abuse, the argument that there was a danger the jury would give undue weight to defendant's involvement in drug use is unpersuasive. Regardless, defendant has not shown that the prosecutor was motivated by bad faith. See *Dobek*, 274 Mich App at 70.

Defendant finally argues that he was a denied a fair trial when the prosecutor argued he must have committed the charged offense because he was a pedophile. This argument is without merit. A review of the record demonstrates that the prosecutor never referred to defendant as a "pedophile." Thus, defendant's discussion of the diagnostic criteria necessary for such a diagnosis is superfluous.

In any event, even if this Court were to conclude that the prosecutor engaged in misconduct, defendant would not be entitled to a reversal of his conviction. Defendant cannot show that "the plain, forfeited error resulted in the conviction of an actually innocent defendant or . . . seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999) (quotation marks and citation omitted) (alteration in *Carines*). The testimony provided at trial by MO, coupled with the footage shown to the jury, which defendant conceded depicted himself and MO, strongly supports the verdict.

### III. ADMISSION OF EVIDENCE

Next, defendant claims that the trial court denied him a fair trial by failing to exercise its duty to ensure

that the challenged evidence was not more prejudicial than probative. We disagree.

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Aldrich*, 246 Mich App at 113. An abuse of discretion occurs when the trial court chooses an outcome that falls outside the permissible range of principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

At trial, the jury heard testimony from defendant's former gymnastics student that he had improperly touched her when she was five years old. The jury was also informed that defendant had pleaded guilty to four counts of sexually abusive activity involving minors. This evidence was introduced pursuant to both MRE 404(b) and MCL 768.27a.

MRE 404(b)(1) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

MRE 404(b) is a rule of inclusion rather than a rule of exclusion. *People v Katt*, 248 Mich App 282, 303; 639 NW2d 815 (2001). As such, evidence of other crimes, wrongs, or acts is admissible under MRE 404(b)(1) if such evidence is (1) offered for a proper purpose, (2) relevant under MRE 402 to a fact of consequence at trial, and (3) the danger of unfair prejudice does not substantially outweigh the probative value of the evidence. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

MCL 768.27a provides in pertinent part that, "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." MCL 768.27a(1). "A defendant's propensity to commit criminal sexual behavior can be relevant and admissible under the statutory rule to demonstrate the likelihood of the defendant committing criminal sexual behavior toward another minor." *People v Petri*, 279 Mich App 407, 411; 760 NW2d 882 (2008). However, the court must still employ the balancing test of MRE 403. See *People v Mann*, 288 Mich App 114, 118 n 12; 792 NW2d 53 (2010).

Defendant primarily argues that the challenged evidence should have been excluded because the trial court "[a]bdicated" its duty to evaluate and balance the probative value of the proposed evidence against its prejudicial effect in deciding whether to admit it. A review of the record demonstrates that this claim cannot succeed.

The trial court specifically recognized its duty to weigh the probative value of defendant's past convictions against the potential for unfair prejudice, and it determined that the record before it provided no reason to exclude the evidence. Defendant's argument that the trial court failed to appropriately analyze the proffered evidence is without merit.

Defendant also argues that KD's testimony describing defendant's conduct toward her was not sufficiently similar to the charged conduct. A showing of similarity might be required if the evidence had simply been admitted pursuant to MRE 404(b). However, this argument fails to recognize that the evidence was also

admitted under MCL 768.27a. Moreover, the testimony indicated that defendant targeted girls of MO's specific age and accordingly, was arguably more probative than prejudicial.

Likewise, defendant's intimation that the length of time between his conduct toward KD and the charged offense should have been a factor in determining its admissibility is not persuasive. MCL 768.27a does not contain a temporal limitation. The remoteness of the other act affects the weight of the evidence rather than its admissibility. *People v McGhee*, 268 Mich App 600, 611–612; 709 NW2d 595 (2005).

### IV. EFFECTIVE ASSISTANCE OF COUNSEL

Next, defendant claims that he was denied the effective assistance of counsel when trial counsel failed to object to misconduct on the part of the prosecution. We disagree.

A claim of ineffective assistance of counsel presents a mixed question of law and fact. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). This Court reviews a trial court's findings of fact, if any, for clear error, and reviews de novo the ultimate constitutional issue arising from an ineffective assistance of counsel claim. *Id.* However, this Court's review of unpreserved claims of ineffective assistance of counsel is limited to mistakes apparent on the record. *People Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

To prevail on a claim of ineffective assistance of counsel, defendant must show that (1) counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, (2) there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different, and (3) the resultant proceedings were fundamentally un-

fair or unreliable. *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). Defendant must also overcome a strong presumption that counsel's actions were the product of sound trial strategy. *People v Carbin*, 463 Mich 590, 600; 623 NW2d 884 (2001).

Defendant's claim that he was denied the effective assistance of counsel is premised on his assertion that the prosecution engaged in misconduct to which counsel posed no objection. The alleged misconduct centered on the admission of evidence pertaining to the federal investigation of child pornography and evidence of drug and drug paraphernalia possession. It is noteworthy that defendant's ineffective assistance claim is not premised on the failure to object to this evidence, but on the failure to assert that its elicitation constituted prosecutorial misconduct. Defendant has not established that the prosecutor engaged in misconduct. Accordingly, it is doubtful that an objection on this ground would have been fruitful. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000) (stating that defense counsel is not required to advocate a meritless position).

However, even if this Court were to agree that trial counsel should have objected to any of the alleged instances of misconduct, defendant is not entitled to a new trial when he cannot demonstrate that the allegedly deficient performance affected the outcome of trial. In light of the overwhelming evidence establishing defendant's guilt of the charged offense, notably MO's testimony and the video footage that defendant concedes depicts him and MO, defendant's claim cannot succeed.

### V. RIGHT TO TRIAL

Next defendant argues that he was punished by the trial court for exercising his right to trial. We disagree.

A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial. *People v Earegood*, 383 Mich 82, 85; 173 NW2d 205 (1970). However, it is not per se unconstitutional for a defendant to receive a higher sentence following a jury trial than he would have received had he pleaded guilty. *People v Rivers*, 147 Mich App 56, 60-61; 382 NW2d 731 (1985). In this case, the trial court was required by statute to impose the sentence defendant received. Accordingly, the sentence cannot be viewed as punishment for defendant's decision to proceed to trial, but rather, must be viewed as the risk he faced by not accepting a plea deal.

### VI. LIFE IMPRISONMENT FOR CSC-I

Finally, defendant claims that his sentence of life imprisonment without the possibility of parole constitutes cruel and unusual punishment or that, in the alternative, his sentence constitutes an impermissible departure from the sentencing guidelines. We disagree with both arguments.

Defendant failed to challenge the constitutionality of MCL 750.520b(2)(c) below. Thus, this claim is not preserved for appellate review. *People v Eccles*, 260 Mich App 379, 385; 677 NW2d 76 (2004). This Court generally reviews constitutional questions de novo. *People v Conat*, 238 Mich App 134, 144; 605 NW2d 49 (1999). However, because this issue is unpreserved it will be reviewed for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763-764. Questions of statutory interpretation are reviewed de novo. *People v Schaub*, 254 Mich App 110, 114-115; 656 NW2d 824 (2002).

Defendant's sentence was imposed pursuant to MCL 750.520b(2)(c), which mandates the penalty of life im-

prisonment without the possibility of parole for a defendant over the age of 17 who commits CSC-I involving a victim less than 13 years of age when the defendant was previously convicted of a similar sex crime with a victim less than 13 years of age. Legislatively mandated sentences are presumptively proportional and presumptively valid. *People v Williams*, 189 Mich App 400, 404; 473 NW2d 727 (1991). In deciding if punishment is cruel or unusual, this Court looks to the gravity of the offense and the harshness of the penalty, comparing the punishment to the penalty imposed for other crimes in this state, as well as the penalty imposed for the same crime in other states. *People v Poole*, 218 Mich App 702, 715; 555 NW2d 485 (1996).

In *People v Hall*, 396 Mich 650, 657-658; 242 NW2d 377 (1976), the Supreme Court held that life without the possibility of parole is not cruel and unusual punishment. However, this ruling was made with respect to the crime of felony murder. *Id.*; see also *People v Launsburry*, 217 Mich App 358, 364; 551 NW2d 460 (1996) (concluding that it was not a cruel or unusual punishment to sentence a juvenile to prison for life without parole for first-degree murder); *People v Fernandez*, 427 Mich 321, 335; 398 NW2d 311 (1986) (concluding that life imprisonment without parole is not cruel and unusual punishment for conspiracy to commit first-degree murder). These cases are, however, distinguishable from the issue before this Court because murder and criminal sexual conduct are distinctly different types of crimes.

Our Supreme Court has held that the graduated system of punishment adopted by the Legislature demonstrates a careful consideration and balancing of the age of the victim and the nature of the sexual conduct. *People v Cash*, 419 Mich 230, 242-243; 351 NW2d 822

(1984). The fact that the Legislature adopted harsher punishment for those crimes involving penetration of a victim under the age of 13, even for a first-time offense,[2] indicates that such crimes are indeed grave.

In addition, a number of states authorize or mandate life in prison without parole for similar offenses. Texas requires a mandatory life sentence without the possibility of parole for repeat sexual offenders involving a victim who is a minor. See Tex Penal Code Ann 12.42(c)(4). Similarly, Louisiana mandates life in prison at hard labor without the possibility for parole for aggravated rape, which includes penetration of a minor, even for a first time offense. See La Rev Stat Ann 14:42(D)(1).[3] Montana also requires mandatory life imprisonment without parole for a repeat sexual offender if a serious bodily injury is inflicted. Mont Code Ann 45-5-503(3)(c)(ii). Oklahoma requires punishment by life in prison without parole for a repeat offender who commits "forcible anal or oral sodomy, rape, rape by instrumentation, or lewd molestation of a child under fourteen (14) years of age . . . ." Okla Stat tit 21, § 843.5(K). South Carolina requires life in prison if the criminal sexual conduct involves a statutory aggravating circumstance. SC Code Ann 16-3-655(D). Florida requires life in prison without parole for a recidivist child sexual offender. Fla Stat 775.082(3)(a)(4)(b). Georgia authorizes life in prison without parole for rape. Ga Code Ann 16-6-1. Notably, in *Norris v Morgan*, 622 F3d 1276, 1295-1296 (CA 9, 2010), the court concluded that

---

[2] Such crimes are punishable by imprisonment for life or any term of years, but not less than 25 years. MCL 750.520b(2)(b).

[3] In *Kennedy v Louisiana*, 554 US 407; 128 S Ct 2641; 171 L Ed 2d 525 (2008), the United States Supreme Court held that the Eighth Amendment bars Louisiana from imposing the death penalty, as authorized by La Rev Stat Ann 14:42(D)(2), for the rape of a child when the crime did not result, and was not intended to result, in the victim's death.

a sentence of life in prison without parole for a recidivist child sex offender was not a violation of the Eight Amendment protection against cruel and unusual punishment. See also *Adaway v Florida*, 902 So 2d 746 (Fla, 2005) (concluding that a sentence of life without parole for a sex offender that victimized a child did not violate Florida's constitutional ban on cruel and unusual punishment).

In light of the foregoing, defendant has failed to overcome the presumption that his legislatively mandated sentence was proportional and valid in this case. *Williams*, 189 Mich App at 404.

Defendant's claim that his sentence constituted a departure from the sentencing guidelines without being supported by substantial and compelling reasons is without merit. Although the sentencing information report related to this case included a recommendation for a minimum sentence range of 126 to 210 months in prison, defendant's argument fails to recognize that the sentencing guidelines range does not apply to crimes for which there is a mandatory sentence. MCL 769.34(5). Moreover, imposition of a mandated sentence does not constitute a departure from the guidelines. See *People v Izarraras-Placante*, 246 Mich App 490, 497; 633 NW2d 18 (2001). Thus, it is not necessary to address defendant's argument that the trial court failed to provide substantial and compelling reasons to justify a departure in this case.

Affirmed.

OWENS, P.J., and JANSEN and O'CONNELL, JJ., concurred.