*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 27, 2023

Plaintiff-Appellee,

v

Nos. 358573; 359596
Macomb Circuit Court

GENE NELSON GOODMAN,

LC No. 2020-000983-FC

Defendant-Appellant.

Before: M. J. KELLY, P.J., and SWARTZLE and FEENEY, JJ.

PER CURIAM.

Defendant was armed with a short-barreled shotgun when he and his codefendant robbed the victim in the victim's automobile-repair shop. The codefendant identified defendant as his accomplice in robbing the victim, and the codefendant testified at trial. Defendant was convicted of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a, felon-in-possession of a firearm during the commission of a felony, MCL 750.227b, possession of a short-barreled shotgun, MCL 750.224(b), and lying to a peace officer, MCL 750.479c. He now argues on appeal that he is entitled to a retrial. We affirm.

Footage of the codefendant's vehicle fleeing the victim's shop, after the victim had been robbed, was captured on neighborhood security cameras. A black hat was found inside that vehicle that matched the description of the hat worn by the gunman, and that hat had defendant's DNA on it. Additionally, a short-barreled shotgun was found in a room of defendant's home. The shotgun contained both defendant's and the codefendant's DNA. The police also collected the codefendant's cell-phone records, which included text messages between defendant and codefendant as well as text messages between codefendant and a third party. The prosecutor did not disclose the text messages to defendant before the trial.

The prosecutor stated, during opening statements, that the codefendant was going to testify at the trial. The prosecutor told the jurors that the codefendant had already pleaded guilty and the twenty-five year (habitual fourth) mandatory sentence would not apply to his sentence. Defendant wanted to cross-examine the codefendant more generally about the entire plea (not just the removal

of the habitual-offender feature), specifically about the length of the codefendant's sentence and whether the length of his sentence induce him to plead guilty.

In denying defendant's request, the trial court explained that codefendant's *Cobbs*[1] evaluation might have induced him to plead, but it did not induce him to testify in this case because the codefendant's sentence had not yet been determined and the matter would be confusing to the jury. The prosecutor had no role in the trial court's decision to provide a *Cobbs* evaluation to the codefendant, and the trial court was not bound by that evaluation in subsequently sentencing the codefendant.

Nevertheless, defendant asked the codefendant about the substance of his *Cobbs* evaluation during cross-examination, and defendant admitted the error in asking the question while striking it from the record. The trial court then instructed the jury to disregard that question. Defendant continued in the cross-examination of the codefendant to question whether the codefendant was testifying falsely.

During closing arguments, the prosecutor displayed a demonstrative exhibit that included a photo of defendant with a photo-shopped black hat and bandana. The jury had already seen the photo, black hat, and bandana, but not combined as in the demonstrative exhibit. Defendant moved to strike the photo and for a curative instruction, which the trial court granted.

Defendant moved for a new trial after his convictions, and the trial court denied his motions. Defendant now appeals.

First, defendant argues that his constitutional right to confrontation was violated when he was not allowed to cross examine the codefendant about the codefendant's plea agreement. Defendant did not, however, raise the issue of his constitutional right to confrontation in the trial court, and unpreserved constitutional claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

The Confrontation Clauses of the United States and Michigan Constitutions grant defendants the right to confront witnesses against them. US Const, Am VI; Const 1963, art 1, § 20. "A primary interest secured by the Confrontation Clause is the right of cross-examination." *People v Adamski*, 198 Mich App 133, 138; 497 NW2d 546 (1993). "The right to confront and cross-examine is not without limits. It does not include a right to cross-examine on irrelevant issues." *People v Arenda*, 416 Mich 1, 8; 330 NW2d 814 (1982). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401.

In this case, defendant was permitted to cross-examine the codefendant regarding the sentencing consideration that the latter received as part of his plea agreement, specifically the removal of the mandatory sentence enhancement as a habitual-fourth offender. When defense counsel ventured into a matter not covered by the prosecutor's plea agreement, i.e., the trial court's *Cobbs* evaluation, defense counsel conceded error and agreed to strike that line of questioning.

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

The trial court instructed the jury to disregard that testimony. Given that defendant had the opportunity to cross-examine the codefendant about the codefendant's plea agreement, as well as the codefendant's motivation to testify falsely, there was no plain error regarding defendant's ability to confront the codefendant as a witness. Moreover, the terms of the *Cobbs* evaluation were not relevant to the codefendant's credibility or bias because, as the trial court explained to defendant, the evaluation was not contingent on the codefendant's testimony.

Next, defendant argues that the trial court erred by denying his motion for a mistrial when the prosecutor committed misconduct by using the altered photo during closing arguments. This Court reviews a trial court's decision on a motion for a mistrial for an abuse of discretion. *People v Dickinson*, 321 Mich App 1, 18; 909 NW2d 24 (2017). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). This Court reviews claims of prosecutorial misconduct to determine whether the defendant received a fair and impartial trial. *People v Brown*, 294 Mich App 377, 382-383; 811 NW2d 531 (2011). "A trial court should grant a mistrial only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial." *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010) (cleaned up).

After defendant objected to the prosecutor's use of the altered photo, the trial court ordered the prosecutor to take the photo down and instructed the jury that it was not to consider any excluded or stricken evidence. Curative instructions can alleviate possible prejudice from isolated, improper conduct such that a mistrial is not required. See, e.g., *People v Waclawski*, 286 Mich App 634, 709-710; 780 NW2d 321 (2009). Juries are presumed to have followed their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011).

The combined demonstrative exhibit was not so salacious or outrageous as to shock a juror. All of the elements of the exhibit had been seen by the jury; it was only the combination into one picture that was unique. The trial court's immediate ruling striking the display, coupled with its subsequent curative instructions, protected defendant's right to a fair trial, and the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Lastly, defendant argues that the prosecutor committed a *Brady*[2] violation by not providing defendant with the codefendant's text messages before the trial, and the trial court erred by not granting a mistrial for this reason. This Court reviews due-process claims, such as allegations of a *Brady* violation, de novo. *People v Schumacher*, 276 Mich App 165, 176; 740 NW2d 534 (2007).

A criminal defendant has a due-process right to obtain exculpatory evidence possessed by the prosecutor if it would raise a reasonable doubt about the defendant's guilt. *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994). To establish such a due-process violation, a defendant must prove the following: "(1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) viewed in its totality, is material." *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). "Evidence is favorable to the defense when it is either exculpatory or impeaching." *Id*. at 150. "To establish materiality, a defendant must show that there is a

---

[2] *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963).

reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*.

Defendant's argument, that the prosecutor committed a *Brady* violation by not disclosing before trial the codefendant's text messages with defendant, is without merit because to establish a *Brady* violation the evidence that is withheld must be unknown to defendant. See *People v Chenault*, 495 Mich 142, 152-154; 845 NW2d 731 (2014). Defendant was aware of the text messages he shared with the codefendant because defendant was a party to those text messages.

Regarding the codefendant's text messages with the third party, defendant argues that the text messages demonstrate that the codefendant spoke with the third party more frequently and that this frequency was indicative of the third party being the accomplice. There was no evidence, however, that linked the third party to the robbery, and the text messages between the codefendant and the third party did not demonstrate any communication about a robbery. Therefore, the text messages between the codefendant and the third party were not material to the case, and the prosecutor did not commit a *Brady* violation by not disclosing those messages to defendant before the trial.

Moreover, given the evidence against defendant, particularly that his DNA was found on the black hat found inside the codefendant's vehicle and on the shotgun found inside defendant's house, there is no reasonable probability that the production of the codefendant's cell-phone communications with the third party would have made a difference in the outcome of defendant's trial. Thus, the trial court did not abuse its discretion in denying defendant's motion for a mistrial.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Kathleen A. Feeney