*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 5, 2024

Plaintiff-Appellee,

v

No. 362818
Grand Traverse Circuit Court
LC No. 2022-014075-FC

GUY LOUIS SHELTON,

Defendant-Appellant.

Before: SWARTZLE, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

This case arises from the victim's allegations that her father, defendant Guy Louis Shelton, sexually abused her numerous times around 2009 when she was about four years old and living with Shelton, before Shelton and the victim's mother divorced. The victim testified regarding one incident involving oral penetration, and two or three instances of sexual contact involving masturbation.

Shelton appeals as of right his jury-trial convictions and sentence for one count of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(2)(b) (victim younger than 13 and defendant 17 or older), and two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (victim under 13). The trial court sentenced Shelton as a second-offense habitual offender, MCL 769.10, to serve 6 to 22½ years' imprisonment for each CSC-II count, concurrent with a sentence of life without parole for CSC-I. On appeal, Shelton contends his convictions were tainted by evidentiary error and prosecutorial misconduct, and that his sentence to life without parole was disproportionate and constituted cruel or unusual punishment. He also contends his trial counsel was ineffective for failing to object to the alleged evidentiary errors and prosecutorial misconduct.

We disagree and affirm. First, Shelton waived his claims of evidentiary error, which in any event are meritless. And while the prosecutor made some troubling and improper statements, any resulting prejudice was or could have been cured by the court's instruction and did not deny Shelton a fair trial. Nor is reversal warranted for the ineffective assistance Shelton alleges concerning these issues. Lastly, Shelton's prior convictions subjected him to the statutorily

-1-

mandated sentence of life without parole, which this Court previously ruled does not constitute cruel or unusual punishment under similar facts, and the trial court properly imposed such a sentence.

## I. BACKGROUND

In 1997, Shelton pleaded no-contest to one count of CSC-II committed that same year. He pleaded guilty in 2010 for not complying with sex-offender reporting requirements, and in 2014 a jury convicted Shelton on one count of CSC-II committed in 2006. Shelton also pleaded guilty in 2017 to one count of CSC-I committed in 2004.

In the present case, the victim, who was 16 years old at the time of trial, testified that she lived with Shelton from birth until her parents divorced when she was four or five years old. She then described numerous instances where Shelton sexually assaulted her when they lived together and she was about four years old. The first incident the victim remembered was Shelton putting his penis in her mouth while they were together in the backyard pool. The victim also testified that Shelton "ma[d]e me jerk him off" two or three times in a bedroom of their home.

As particularly relevant here, Amber Perry, the victim's mother and Shelton's ex-wife, briefly discussed Shelton's prior convictions, noting that his 2017 conviction involved Shelton sexually abusing Perry's other daughter (unrelated to Shelton), the victim's sister. The sister did not disclose this until she was 15 years old, but the conduct occurred in the same location as here, and when the sister was roughly the same age as the instant victim when assaulted. Perry similarly mentioned that Shelton also sexually abused one of his nieces, although Perry was unsure where or when this occurred.

Detective Michael Matteucci, who investigated the abuse allegations here, testified in relevant part that he met with Shelton after the victim's April 2021 forensic interview, and that Shelton denied any wrongdoing and claimed Perry, the victim's mother, was "out to get him" and "[wa]s forcing the kids to say this against their will." Matteucci testified further that he first had contact with Shelton in 2013 concerning Shelton's abuse of the victim's sister, at which time Shelton made similar claims and denials. Matteucci also interviewed Shelton in connection with the 2017 case involving the abuse of Shelton's niece, when Shelton again denied responsibility and thought Perry was responsible in some way. Matteucci then noted Shelton's various prior convictions for child sexual abuse in 1997, 2014, and 2017, with the prosecutor providing the certified conviction for each—as well as the transcripts for the latter two offenses—as exhibits in the record. These were admitted without objection.

Shelton testified in his own defense, denying the victim's allegations. Shelton also denied having any sexual attraction to minors, although he acknowledged being at fault for his 1997 CSC conviction, which took place during his 20s. Shelton also acknowledged his 2014 conviction related to sexual abuse of the victim's sister, but he maintained his innocence in that case. And Shelton conceded, in contrast to this case and his 2014 conviction, that he took responsibility for the 2017 conviction for which he pled guilty.

On cross-examination, Shelton admitted that his 1997 conviction involved having his five-year-old stepdaughter touch his penis on multiple occasions, at least once in a bathtub in front of

Shelton's other daughter not at issue in this case, who was two years old at the time—and that he regularly masturbated in front of these children. Shelton relatedly admitted that his 2017 conviction involved him digitally penetrating his niece in 2006 while she was in the bathtub, in the same home as at issue here. Shelton also acknowledged that the victim's sister alleged that Shelton made her masturbate him in a bedroom—again in the same home as at issue here—and that he was found guilty of this conduct. Moreover, Shelton admitted that he committed perjury when testifying in 2014 that he only had sexual contact with consenting adults since his 1997 conviction. He similarly admitted to lying to police about not assaulting his niece when initially interviewed in the 2017 case.

During opening and closing arguments at trial, the prosecutor repeatedly asserted that Shelton was a pedophile and sexually attracted to children. The prosecutor also argued extensively that Shelton's criminal history bolstered the victim's credibility and showed a pattern consistent with her allegations. Notably, during the prosecutor's rebuttal, he asserted that the victim's delayed disclosure was "incredibly common, as testified to by detective Matteucci." And noting that there was also delayed disclosures in two of Shelton's prior CSC cases, the prosecutor said delayed disclosures "are more the rule than the—the exception."

Shelton was convicted and sentenced as described earlier. He now appeals.

## II. STANDARDS OF REVIEW

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Solloway*, 316 Mich App 174, 191; 981 NW2d 255 (2016). "An abuse of discretion is found when the trial court's decision falls outside the range of reasonable and principled outcomes." *Id*. at 191-192. "Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "A preserved trial error in the admission of evidence does not constitute grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Solloway*, 316 Mich App at 192 (quotation marks and citation omitted).

However, Shelton never preserved his claims of evidentiary error, and unpreserved evidentiary errors are reviewed for plain error affecting a defendant's substantial rights. See *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To avoid forfeiture under plain error review,

> three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. . . . Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings[] independent of the defendant's innocence. [*Id*. (quotation marks and citations omitted).]

"Where issues of prosecutorial misconduct are preserved, we review them de novo to determine if the defendant was denied a fair and impartial trial." *People v Mann*, 288 Mich App 114, 119; 792 NW2d 53 (2010). However, Shelton also failed to preserve his claims of prosecutorial misconduct, and unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011). This Court "will not find error requiring reversal if a curative instruction could have alleviated the effect of the prosecutor's misconduct." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014).

"Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law." *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "Findings of fact are reviewed for clear error, while constitutional determinations are reviewed de novo." *Id*. (quotation marks and citation omitted). "A finding is clearly erroneous if this Court is left with a definite and firm conviction that the trial court made a mistake." *Id*. at 227-228 (quotation marks and citation omitted). But because this Court denied Shelton's motion to remand and no *Ginther*[1] hearing occurred here, this Court's review "is for errors apparent on the record." *Id*. at 227.

Concerning Shelton's sentencing claims, all sentences, including those within the recommended sentencing guidelines, are reviewed for reasonableness consistent with the Supreme Court's opinion in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). *People v Posey*, 512 Mich 317, 349-352, 357, 359-360; 1 NW3d 101 (2023). Per *Steanhouse*, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*,[2] 435 Mich 630, 636; 461 NW2d 1 (1990), "which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 459-460; see also *id*. at 475 (reasonableness review tests "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range."*)*. A defendant bears the burden of overcoming a presumption of proportionality when appealing a within-guidelines sentence, and must demonstrate that such a sentence "is unreasonable or disproportionate." *Posey*, 512 Mich at 357-359.

We generally review constitutional questions de novo. *People v Burkett*, 337 Mich App 631, 635; 976 NW2d 864 (2021). But Shelton never preserved his argument regarding cruel or unusual punishment, and unpreserved constitutional issues are reviewed for plain error affecting substantial rights. *Id*.

### III. OTHER-ACTS EVIDENCE

Shelton contends the trial court erroneously admitted other-acts evidence because the prosecution never filed the required notice of intent to use such evidence under MCL 768.27a(1).

---

[1] See *People v Ginther*, 390 Mich 436, 443-444; 212 NW2d 922 (1973).

[2] *Milbourn* was overruled in part on other grounds by *Steanhouse*.

Alternatively, he argues that this evidence was unduly prejudicial. Shelton also contends his trial counsel was ineffective for not objecting to the admission of this evidence.

As an initial matter, Shelton waived any claim of evidentiary error regarding the admitted other-acts evidence because his trial counsel explicitly and unequivocally stated at trial that this evidence was something that jurors "absolutely . . . *can consider*." Waiver is "the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). A defendant is deemed to have waived an evidentiary error when the defense attorney agrees to admission of the evidence. *People v McDonald*, 293 Mich App 292, 295-296; 811 NW2d 507 (2011). A defendant's waiver of an issue extinguishes any error. *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011). Therefore, because Shelton's counsel conceded to admission of the now-challenged evidence, there is no error for this Court to review. But we nonetheless address Shelton's evidentiary claims because of Shelton's related ineffective-assistance claim.

## A. NOTICE

MCL 768.27a(1) states:

> Notwithstanding section 27,[3] in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, *the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial* or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered. [Emphasis added.]

As an initial matter, the prosecutor is correct that MCL 768.27a(1) does not contemplate any formal notice of an intent to admit other-acts evidence, but requires the *disclosure* of such evidence 15 or more days before trial. The prosecutor asserts that this requirement was met, but the record is silent on this issue. Nevertheless, the fact that Shelton's trial counsel conceded that admitting the other-acts evidence was appropriate—notably after the prosecutor relied extensively on this evidence in his trial brief—logically supports that it was properly disclosed.

In any event, Shelton provides little substantive argument on the purported lack of notice. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted). The only authority Shelton cites related to this subissue apart from MCL 768.27a(1)

---

[3] MCL 768.27 allows for the admission of other-acts evidence in all criminal cases to prove a defendant's "motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act."

itself, is *People v Hawkins*, 245 Mich App 439; 628 NW2d 105 (2001), which concluded that the failure to provide reasonable notice of the intent to introduce other-acts evidence under MRE 404(b)(2) was plain *but harmless* error, i.e., the error *did not* affect the defendant's substantial rights. *Id*. at 453-456.

> This Court reasoned in *Hawkins* that
>
> the evidence at issue was relevant and not substantially more prejudicial than probative. Because this evidence was admissible, notice to Hawkins would not have had any effect on whether the trial court should have admitted it at trial, regardless of the record or arguments that could have been developed and articulated following notice. Consequently, this case does not invoke the Supreme Court's concern that, without notice, the prosecutor was able to use irrelevant, inadmissible prior bad acts evidence to secure Hawkins' conviction. [*Id*. at 455.]

The Court went on to state that admissible evidence lacking notice could warrant reversal on the basis of "the effect [this] plain error has on a proceeding," but determined that the defendant did not meet his burden for such relief:

> Because Hawkins has never suggested how he would have reacted differently to this evidence had the prosecutor given notice, we have no way to conclude that this lack of notice had any effect whatsoever. For instance, Hawkins has not suggested or created a record that would suggest that, had he known the prosecutor intended to introduce this evidence, he would have called another witness to testify, that his attorney would have objected to the evidence, or that he would have provided other evidence to counter the prior bad acts testimony. [*Id*. at 455-456.]

The Court concluded that "while lack of notice may be adequate to warrant reversal in some cases, the lack of notice in this case lacked the significant effect, either alone or in concert with other factors, to warrant reversing Hawkins' conviction and granting him a new trial." *Id*. at 456.

Here, like in *Hawkins*, Shelton provides no argument of how he would have reacted or how this case would have proceeded differently without the error of notice he alleges.[4] And as we conclude in the next subsection, the challenged evidence was admissible and not unduly prejudicial. Accordingly, Shelton has failed to establish that this alleged evidentiary error affected his substantial rights.

## B. UNDUE PREJUDICE

In *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007), this Court held that "[i]n cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-

---

[4] While Shelton contends both his alleged evidentiary errors, "whether taken individually or in combination," warrant reversal under plain error review, his substantive argument relates primarily to the evidence's general inadmissibility and his claim of undue prejudice. This is addressed under the next subissue.

acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors." The *Pattison* Court concluded that the trial court did not err when it admitted testimony "regarding [the] defendant's alleged sexual abuse of four other minors." *Id*. at 618. However, this Court cautioned "trial courts to take seriously their responsibility to weigh the probative value of the evidence against its undue prejudicial effect in each case before admitting the evidence. See MRE 403." *Id*. at 621; see also *People v Watkins*, 491 Mich 450, 515; 818 NW2d 296 (2012) (holding that evidence that is admissible under MCL 768.27a may still be excluded under MRE 403). MRE 403 states in part that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."

> [W]hen applying MRE 403 to evidence admissible under MCL 768.27a, courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect. That is, other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference. . . .
>
> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

We conclude that the other-acts evidence was properly admitted here. Importantly, although propensity evidence is usually prohibited, that is not so in CSC cases. MCL 768.27a; *Pattison*, 276 Mich App at 620. And the *Watkins* factors applicable in this case overwhelmingly favor admission. Shelton's three prior CSC convictions all involved similar conduct, the sexual assault of young female family members. And like the victim's allegations here that Shelton assaulted her once in the pool, Shelton's 1997 and 2017 convictions involved assaults of young relatives while they bathed. His 2014 conviction also involved similar assaults in the same home as here, but against the victim's sister.

Temporal proximity is not so clear cut, however. Shelton's prior acts occurred in 1997, 2004, and 2006, and conduct at issue here allegedly occurred around 2009. The conduct at issue admittedly occurred three years after even Shelton's most recent prior act, with the 1997 assault notably occurring over a decade earlier. Nonetheless, because these acts together demonstrated a clear pattern of conduct continuing throughout Shelton's adult life, this factor still favors admission.

The evidence was also reliable. Shelton himself admitted committing the assaults in 1997 and 2004. And while he denied assaulting the victim's sister in 2006, he was duly convicted by a jury of this offense in 2014. Finally, given that (1) the case essentially turned on Shelton's and the victim's credibility and (2) the alleged conduct occurred over a decade prior, the evidence was not

unnecessary. For these reasons, the challenged other-acts evidence in this case was not unduly prejudicial.

## C. INEFFECTIVE ASSISTANCE

To establish that his or her lawyer provided ineffective assistance, a defendant must show that (1) the lawyer's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for the lawyer's deficient performance, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In addition, effective assistance of counsel is presumed, and a defendant bears a heavy burden of proving otherwise. The defendant also bears the burden of establishing the factual predicate for his claim. [*People v Anderson*, 322 Mich App 622, 628; 912 NW2d 607 (2018) (cleaned up).]

"[C]ounsel is not ineffective for failing to raise meritless or futile objections." *People v Putman*, 309 Mich App 240, 245; 870 NW2d 593 (2015). Because both of Shelton's claims of evidentiary error are meritless, his trial counsel was not ineffective for failing to object. This issue warrants no further discussion.

## IV. PROSECUTORIAL MISCONDUCT

Shelton argues that numerous instances of prosecutorial misconduct denied him a fair trial. Shelton also argues that his trial counsel was ineffective for not objecting to the prosecutor's misconduct. We disagree. Specifically, while the prosecutor made some troubling and improper statements, any resulting prejudice was or could have been cured by the court's instruction and did not deny Shelton a fair trial.

"The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *Brown*, 294 Mich App at 382. "Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate a prosecutor's remarks in context." *Id*. at 382-383. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

"A prosecutor may not make a factual statement to the jury that is not supported by the evidence, but he or she is free to argue the evidence and all reasonable inferences arising from it as they relate to his or her theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007) (citations omitted). "The prosecution has wide latitude in arguing the facts and reasonable inferences, and need not confine argument to the blandest possible terms." *Id*.; see also *Unger*, 278 Mich App at 236 ("Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial.")

However, a prosecutor "may not appeal to the jury to sympathize with the victim," nor "urge the jury to convict as part of its civic duty on the basis of its prejudices." *Unger*, 278 Mich App at 237. And "[a] prosecutor may not offer his or her personal belief about the defendant's

guilt, but may summarize what he or she thinks the evidence will show." *People v Lane*, 308 Mich App 38, 63; 862 NW2d 446 (2014).

Further, prosecutors "cannot vouch for the credibility of [a] witness to the effect that [the prosecutor] has some special knowledge concerning [the] witness'[s] truthfulness." *People v Isrow*, 339 Mich App 522, 529; 984 NW2d 528 (2021) (quotation marks and citation omitted). "However, the prosecutor may argue from the evidence, and reasonable inferences from it, to support a witness's credibility." *Id.* "The prosecutor also may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id.* at 529-530 (quotation marks and citation omitted).

First, although the prosecutor used charged language in describing Shelton as a pedophile who was attracted to and habitually abused minors, this was supported by evidence in the record. Importantly, there was evidence not only that Shelton assaulted the victim in this case, but also that he had a long history of sexually abusing other minors throughout his adult life. We similarly conclude that the prosecution's commentary regarding delayed disclosures was reasonably supported by the evidence and not improper. The record notably supports that the victim's sister, whom Shelton abused before the victim here, also delayed disclosing her experience until years later as a teenager. More importantly, Detective Matteucci testified that, in his experience having handled hundreds of child sexual abuse cases, it was "[v]ery common" for victims to delay reporting abuse.

Shelton additionally argues that the prosecutor finished his closing argument by vouching for the victim's credibility. The transcript page Shelton cites includes the following commentary:

Believe this girl, believe this victim, she has nothing to gain by making this up. She's here because she wants to tell the truth. She's here because she wants to get this unimaginable weight off her chest. A weight that this defendant put there when he robbed her of her innocence.

So follow the evidence, follow your hearts. Follow the common sense that you have. The defendant is guilty. Hold him accountable, and return a verdict of guilty on each of the counts.

As an initial matter, the prosecutor was entitled to comment on the victim's credibility during closing arguments because this was central to the case. Further, these closing comments notably occurred after the prosecutor, comparing Shelton's and the victim's credibility, specifically noted Shelton's history of lying versus the fact that the victim was recalling events from her early childhood. And to the extent the prosecutor argued that the victim had no reason to lie, this was reasonably supported by her testimony. Specifically, the victim said she wished she did not have to testify against Shelton but "was going to suck it up" given what occurred with her and her sister. For these reasons, viewing the prosecutor's remarks in context, his credibility argument was reasonably based on facts in evidence, not improperly based on special knowledge.

However, we are troubled by the prosecution's additional instruction for jurors to "follow your hearts" and statement that Shelton "*is* guilty." (Emphasis added.) Viewed in isolation, the

former seemingly urges jurors to convict on the basis of their prejudices. *Unger*, 278 Mich App at 237. And the latter certainly represents the prosecution's personal belief about Shelton's guilt. *Lane*, 308 Mich App at 63. Nonetheless, while we caution prosecutors against such comments, they did not deny Shelton a fair trial here. Both comments immediately followed the prosecution's primary instruction to "follow the evidence," and came after an extensive summary of the evidence in the case. Viewing the statements in context, the prosecutor properly argued what he believed the evidence had shown. Also, as discussed later in this subsection, any potential prejudice from these statements was cured by the trial court's instructions.

Shelton also challenges the prosecutor's statement that the victim was alienated from her family and would have lifelong trauma. But the statement regarding trauma was reasonably supported by the evidence. The victim testified regarding a variety of negative effects on her emotional and mental health that continued to the present and she attributed at least in part to Shelton's conduct.

The prosecutor's reference to family alienation is a different matter, however. The victim did not discuss her current relationship with or feelings toward Shelton in any detail, and the only other family relationship she mentioned was that with Perry, her mother. Although the victim did not have contact with Shelton after his imprisonment when she was in first grade, nothing in the record shows that his assault in this case or the victim's disclosure thereof caused her to be alienated from family. Accordingly, we conclude that this statement was an improper appeal to jurors' sympathies that was unsupported by the evidence. The same applies to the prosecutor's description of the conduct at issue as "a homicide of the soul" and "the ultimate violation of body, spirit, trust, and innocence," which we conclude was needlessly inflammatory.

Nevertheless, these improper statements did not deny Shelton a fair trial. These were mere isolated and passing comments. And they were made within extensive opening and closing arguments largely and appropriately focused on the evidence and what this evidence reasonably showed. See *Solloway*, 316 Mich App at 201 ("A defendant is entitled to a fair trial, not a perfect one.").

In sum, while the prosecutor made various troubling and improper statements, they do not warrant reversal when viewed in context. Further, any prejudice from these errors was cured by the trial court's instructions to the jury. The trial court explicitly instructed jurors to evaluate the case "based only on the evidence and these instructions . . . ." "You must not let sympathy or prejudice influence your decision." The court stated, "The lawyers' arguments and statements are not evidence. . . . You're only to accept things the lawyers have said that [are] supported by the evidence or by your own common sense and general knowledge." The court also stated,

> You must not convict the defendant here solely because you think he's guilty of other bad conduct. The evidence must convince you beyond a reasonable doubt the defendant committed the crimes alleged here, or you must find him not guilty.

There is no indication that the trial court's instructions failed to remove any possible prejudice from the prosecutor's commentary. Ultimately, Shelton cannot show that any of the prosecutor's remarks constituted error affecting his substantial rights. And it thus follows that Shelton cannot establish a reasonable probability sufficient to undermine confidence in the case's

outcome had defense counsel objected to the challenged statements. *Anderson*, 322 Mich App at 628. Accordingly, Shelton's claims of prosecutorial misconduct, as well as his related ineffective-assistance claim, must fail.

## V. SENTENCE TO LIFE WITHOUT PAROLE

Shelton contends that his sentence to life without parole for CSC-I was disproportionate and constituted cruel or unusual punishment.

However, as acknowledged by both parties on appeal, this Court is bound to follow its prior opinion in *Brown*, 294 Mich App 377, which addressed and rejected the same arguments Shelton makes concerning his sentence here. In *Brown*, the defendant was convicted on one count of CSC-I under MCL 750.520b(1)(a) (victim under 13 years old). *Id*. at 379. The defendant, like Shelton, argued that his sentence to life without parole under MCL 750.520b(2)(c) was either disproportionate or constituted cruel or unusual punishment. *Id*. at 389. The Court first stated that MCL 750.520b(2)(c) "mandates the penalty of life imprisonment without the possibility of parole for a defendant over the age of 17 who commits CSC-I involving a victim less than 13 years of age when the defendant was previously convicted of a similar sex crime with a victim less than 13 years of age." *Id*. at 389-390. After rejecting the defendant's constitutional challenge to MCL 750.520b(2)(c) as cruel or unusual punishment, *id*. at 390-392, the Court stated that "the sentencing guidelines range does not apply to crimes for which there is a mandatory sentence" and "imposition of a mandatory sentence does not constitute a departure from the guidelines."

Here, Shelton, who was found guilty of CSC-I for conduct against the four-year-old victim when he was over 17 years old, had multiple prior CSC convictions for listed offenses against other minors under age 13. Shelton's prior convictions thus subjected him to the statutorily mandated sentence of life without parole, which *Brown* previously ruled does not constitute cruel or unusual punishment under similar facts, and the trial court properly imposed such a sentence. Further, Shelton conclusively asserts that his statutorily mandated life-without-parole sentence was disproportionate without any substantive analysis of law or facts supporting this conclusion, and he thus has not met his burden to overcome the presumed proportionality of the sentence. See *Posey*, 512 Mich at 357-359; *Bronson Methodist Hosp*, 298 Mich App at 199.

Affirmed.

/s/ Brock A. Swartzle
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young

-11-