*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KURT THOMAS GRINER,

        Defendant-Appellant.

UNPUBLISHED
September 18, 2025
9:38 AM

No. 369374
Oakland Circuit Court
LC No. 2019-272409-FH

Before: CAMERON, P.J., and MURRAY and KOROBKIN, JJ.

PER CURIAM.

Defendant appeals his sentences after a jury convicted him of conspiracy to use false pretenses to obtain $100,000 or more (conspiracy), MCL 750.157a, and six counts of using false pretenses to obtain $100,000 or more (false pretenses), MCL 750.218(7)(a). The trial court sentenced defendant to seven concurrent terms of 100 months to 20 years' imprisonment, and ordered defendant to pay $3,664,352.54 in restitution. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant was the director of engineering for International Automotive Components (IAC), a multinational supplier of automotive components that employs automotive designers for product development. SDS Design, a company that subcontracted designers to IAC, was owned by codefendant Shannon Brinkley. Defendant and Brinkley conspired to create and file timesheets for three fictitious employees for work they allegedly performed for IAC. Ultimately, IAC paid more than $4.9 million for work hours claimed by the fictitious employees.

The day before defendant was arrested, the Michigan State Police executed a search warrant imposing a freeze on defendant's financial accounts, including an Individual Retirement Account (IRA) which defendant sought to use to pay his legal fees. The IRA contained funds that were deposited from a 401(k) that defendant maintained while employed by IAC. The parties stipulated to an order authorizing the disbursement of about $111,107 from defendant's IRA to pay for attorney fees and household expenses. Defendant later retained a second attorney who

-1-

moved for release of the remaining $383,489.31 in defendant's IRA. Defendant argued that, because the funds were untainted, they must be released to pay his legal fees. The trial court only granted the release of an additional $60,000, finding that the total "amount released [wa]s in excess of the reasonable attorney fee rate[.]"

After his arrest, defendant was offered a *Cobbs*[1] plea bargain that would have allowed him to plead guilty to one count of conspiracy and one count of false pretenses. In exchange, the prosecution would dismiss the five additional counts of false pretenses, and defendant would receive a 40-month prison sentence. Defendant rejected the plea bargain, opting to go to trial. After the jury convicted defendant, his minimum sentence range was assessed at 30 to 50 months' imprisonment. The trial court departed from the guidelines range and imposed a minimum sentence of 100 months. This appeal followed.

## II. DEPARTURE SENTENCE

Defendant argues he is entitled to resentencing because his sentence 1) was imposed to penalize him for rejecting a plea offer and exercising his constitutional right to a jury trial, and 2) is unreasonable and disproportionate. We disagree.

## A. PRESERVATION AND STANDARDS OF REVIEW

A claim that a sentence is vindictive implicates a defendant's due-process rights. *Michigan v Payne*, 412 US 47, 50; 93 S Ct 1966; 36 L Ed 2d 736 (1973). Because defendant did not claim that his sentence was imposed as a penalty for exercising his right to a jury trial before the trial court, this issue is unpreserved. *People v Anderson*, 341 Mich App 272, 279; 989 NW2d 832 (2022). We therefore review this argument for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999). An error is plain if it is "clear or obvious." *Id*. at 763. "Substantial rights are affected when the defendant is prejudiced, meaning the error affected the outcome of the trial." *People v Jones*, 297 Mich App 80, 83; 823 NW2d 312 (2012).

Defendant's proportionality argument, however, is preserved, because there is no preservation requirement for such claims. *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). When reviewing a departure sentence for reasonableness, we must review "whether the trial court abused its discretion by violating the principle of proportionality . . . which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). "The trial court's fact-finding at sentencing is reviewed for clear error." *People v Lampe*, 327 Mich App 104, 125-126; 933 NW2d 314 (2019).

---

[1] *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

## B. PUNITIVE SENTENCING

"A sentencing court cannot base its sentence on a defendant's decision to exercise his constitutional right to a jury trial." *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). But it is not per se unconstitutional when a defendant receives a higher sentence following a trial than he would have received from a plea. *Id*. In other words, the trial court's willingness to consider a more lenient sentence if a defendant pleads guilty does not establish that a harsher sentence imposed after a jury trial was imposed as a penalty for the defendant exercising his right to trial. See *People v Godbold*, 230 Mich App 508, 512, 516-517; 585 NW2d 13 (1998).

The record does not support defendant's claim that the trial court punished him for rejecting the plea offer, which was made more than two years prior. To the contrary, the trial court indicated that it had presided over defendant's trial, which introduced the trial court to more information than was available at the time the plea offer was made. The trial court also noted that the victim's impact statement, which was unavailable at the time of the plea offer, was of "great magnitude" to the court when fashioning defendant's sentence. When determining a fair sentence, the trial court emphasized the large size of the fraud and defendant's repeated criminal behavior and betrayal of his former company for over a decade. Because the record belies defendant's claim that the trial court imposed a more severe sentence to punish him for exercising his right to a jury trial, defendant is not entitled to relief on these grounds.[2]

## C. PROPORTIONALITY

Trial courts may "depart from the guidelines when, in their judgment, the recommended range under the guidelines is disproportionate . . . to the seriousness of the crime." *People v Walden*, 319 Mich App 344, 352; 901 NW2d 142 (2017) (quotation marks and citation omitted). The principle of proportionality primarily involves whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines. *Steanhouse*, 500 Mich at 472. To determine a proportionate sentence, a trial court must consider the nature of the offense and the background of the offender. *Id*. Other factors that may be considered by a trial court under the proportionality standard include, but are not limited to:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's

---

[2] Defendant also contends that he is entitled to the 40-month minimum sentence that was initially offered as part of the plea bargain. But because he provides no support to demonstrate that the trial court was bound to sentence him consistent with the plea offer, this argument is abandoned. See *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims[.]") (Quotation marks and citation omitted).

potential for rehabilitation.  [*Lampe*, 327 Mich App at 126 (quotation marks and citation omitted).]

The trial court also "must justify the sentence imposed in order to facilitate appellate review, which includes an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been."  *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017) (quotation marks and citations omitted).

Defendant argues that the trial court's departure from the sentencing guidelines was based on factors already considered in the scoring of the guidelines.  But, when reviewing a sentence for reasonableness, our inquiry is not simply whether factors were already considered in the trial court's scoring of the guidelines; we must also consider whether inadequate weight was given to a variable.  See *Lampe*, 327 Mich App at 126.

The trial court's first reason for departing from the guidelines was the "enormous, ginormous, gigantic" amount of loss suffered by IAC.  The parties agreed that defendant would pay $3,664,352.54 in restitution for the property that he falsely obtained from IAC.  Defendant was assigned 10 points under Offense Variable (OV) 16—the maximum allowed—because the property he obtained "had a value of more than $20,000.00[.]"  MCL 777.46(1)(d).  The trial court explained that the more than $3.6 million in this case substantially exceeded the highest amount considered by OV 16, stating that "the restitution in this case is 183 times higher than the maximum requirement for that threshold."  Thus, the trial court provided a compelling explanation why inadequate weight was given to OV 16, and this reason supports the trial court's departure from the guidelines range.

The trial court also found that it was appropriate to depart from the guidelines because defendant defrauded IAC for "over a decade," and engaged in "repeated criminal behavior, day in and day out, for an extraordinary [sic] lengthy amount of time."  Defendant argues that the trial court's rationale was already considered in the assessment of OV 13, which addresses a continuing pattern of criminal behavior.  MCL 777.43.  Defendant was assessed five points for OV 13, which considers "3 or more crimes against property" within a five-year period.  MCL 777.43(1)(f) and (2)(a).  In this case, however, the trial court emphasized that defendant's scheme to defraud his employer spanned over the course of a decade.  The trial court's remarks were accurate and properly considered a pattern of criminal behavior not considered in the guidelines.  This aggravating circumstance also supports the trial court's departure from the guidelines range.

The trial court's final reason for departing from the guidelines was because defendant's conduct "involved a betrayal of trust of those who were closest to the defendant in his career," had a "tremendous impact" on IAC, and IAC employees "had serious mental toll taken on them."  Defendant acknowledges that the parties agreed OV 4, which addresses psychological injury to the victim, MCL 777.34, should be assessed zero points because IAC is a corporate victim.  But defendant fails to explain why the trial court improperly considered the impact his crimes had on his employer and its employees, despite the fact that these circumstances are not embodied by the

guidelines.[3]  Thus, defendant's argument is abandoned.  See *People v Iannucci*, 314 Mich App 542, 545; 887 NW2d 817 (2016).

In sum, the record supports the trial court's rationale for imposing a departure sentence, and demonstrates that the court thoroughly considered the seriousness of defendant's crimes, the offender, and the applicable guidelines range when fashioning defendant's sentence.  Accordingly, the trial court did not abuse its discretion by imposing a departure sentence, and defendant is not entitled to resentencing.

## III.  STANDARD 4 BRIEF

In his Standard 4 brief, defendant raises an additional issue, claiming that the trial court abused its discretion by limiting his access to the "innocent funds" in his IRA, effectively denying defendant his constitutional right to retain his counsel of choice.  We disagree.

## A.  STANDARDS OF REVIEW

We review a trial court's decision affecting a defendant's right to an attorney of his choice for an abuse of discretion.  *People v Akins*, 259 Mich App 545, 556; 675 NW2d 863 (2003).  A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes.  *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014).  We review defendant's related claim of constitutional error de novo.  *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

## B.  COUNSEL OF CHOICE

Both the United States and Michigan constitutions guarantee that criminal defendants shall have the right to counsel for their defense.  US Const, Am VI; 1963 Const, art 1, § 20.  This includes the right to choice of counsel.  *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009).  "Deprivation of the right is complete when the defendant is erroneously prevented from being represented by the lawyer he wants[.]"  *Id*. (quotation marks and citation omitted).  "It is not necessary that a defendant show prejudice; it is enough that a defendant merely show that a deprivation occurred."  *Id*.  But this right is not absolute, and a court must balance the defendant's "right to counsel of his choice and the public's interest in the prompt and efficient administration of justice . . . to determine whether [a defendant's] right to choose counsel has been violated."  *Id*. at 387 (quotation marks and citation omitted).

---

[3] We note that the trial court also highlighted that, while defendant was not charged with bribery, it found, by a preponderance of the evidence, that "there was bribery in this case" involving one of IAC's employees.  Although the trial court highlighted this "very concerning set of facts," it also made clear that it would impose the same sentence without a finding of bribery.  Because this was not a reason for imposing a departure sentence, it is unnecessary for us to consider if this was a permissible consideration.

Defendant relies on the United States Supreme Court's decision in *Luis v United States*, 578 US 5; 136 S Ct 1083; 194 L Ed 2d 256 (2016), to support his claim that the trial court abused its discretion by limiting the release of his "innocent funds" to pay the attorney of his choosing. In *Luis*, the Supreme Court held that "the pretrial restraint of legitimate, untainted assets[4] needed to retain counsel of choice violates the Sixth Amendment." *Id*. at 10. The Court found that a defendant "needs *some* portion of those same funds to pay for the lawyer of [their] choice," *id*. at 18 (emphasis added), and held that a defendant "has a Sixth Amendment right to use [their] own 'innocent' property to pay a *reasonable* fee for the assistance of counsel[,]" *id*. at 23 (emphasis added).

Here, there was no "pretrial restraint of legitimate, untainted assets" needed to retain defendant's counsel of choice. *Id*. at 10. Before defendant filed his motion for the release of the remaining funds in his IRA, the prosecution stipulated to the release of more than $111,000, half of which was allocated for payment of attorney fees. The trial court released an additional $60,000 for attorney fees after defendant moved for the release of additional funds. Thus, defendant was not denied his Sixth Amendment right to use his "innocent funds" to pay for the assistance of counsel.

Defendant also argues that the trial court's order releasing the additional $60,000 violated his right to counsel of choice because the order stated that the court had "no intention of releasing additional funds" and the released funds were used up before trial, forcing his retained counsel to withdraw. However, at a subsequent hearing the trial court told defendant that it was "reserving any judgment on any future requests to tap into what you consider to be untainted funds," but that defendant would need to file a motion for the court to review. To our knowledge, no such motion was ever filed. Therefore, we cannot conclude that the trial court abused its discretion.

Additionally, on appeal, defendant asserts that the trial court's finding regarding the reasonable hourly rate was error. But he provides no meaningful analysis or record evidence to support his contention. Instead, defendant relies on his own "quotes" from local law firms and an unpublished opinion from a civil case. Because "[a]n appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority," *Iannucci*, 314 Mich App at 545 (quotation marks and citation omitted), we find this argument is abandoned.

Affirmed.

/s/ Thomas C. Cameron
/s/ Christopher M. Murray
/s/ Daniel S. Korobkin

---

[4] The Court explained that untainted property "belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime." *Luis*, 578 US at 12-13.